

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

November 17, 1958

Mr. J. M. Falkner
Commissioner
Department of Banking
Austin, Texas

Opinion No. WW-519

Re: Whether savings and loan asso-
ciation commenced business
within six months from the date
of the issuance of certificate
of authority by the Banking
Commissioner of Texas, as re-
quired by Article 881a-4, V.C.S.,
and whether said Article is con-
stitutional.

Dear Mr. Falkner:

You have requested the opinion of this office based
upon the following factual situation:

In the latter part of 1957 an application for char-
ter for a savings and loan association was filed with the
Department of Banking. An investigation was made, and on
February 26, 1958, the Articles of Association and By-Laws were
approved and filed, and a Certificate of Authority to do busi-
ness was issued to the association.

On June 6, 1958, the association made application to
the Federal Savings and Loan Insurance Corporation for insur-
ance of its shares through the Federal Home Loan Bank of Little
Rock through which applications for insurance are processed.
Upon receipt of the application a Vice-president of the Federal
Home Loan Bank of Little Rock instructed the association not to
transact any business, or advertise the possibility that insur-
ance would be approved before actual approval of the insurance
was received by the association. The application for insurance
is still pending.

On or about August 5, 1958, the association notified
the Banking Department that it would commence business on
August 18th. The Banking Department having been advised that
the association had not actually commenced business but had
merely opened an office, sent a departmental examiner to in-
vestigate the situation. On September 11, 1958, the depart-
mental examiner completed his examination of the association
as of August 26, 1958, which examination revealed the follow-
ing facts:

(1)  The association had not opened share savings accounts or sold share certificates, or issued temporary receipts for money received other than for permanent capital stock.

(2)  No loans of any type had been made or any provisions for loans or commitments to lend money had been made by the association, nor were any loans being held in escrow for the association.

(3)  No books of original entry such as the general ledger, general journal, or subsidiary ledger had been acquired.  The only records in the possession of the association consisted of a check book, together with receipts for payment of certain expenses incurred.

(4)  No office supplies, temporary receipt books or certificates other than a book of permanent stock certificates had been purchased or acquired by the association, nor had the association purchased or acquired bookkeeping equipment or other such equipment, with the exception of a corporate seal, or furniture and fixtures other than a desk, four chairs, and a filing cabinet located in the "office" which were the property of the organizers.

(5)  No personnel necessary to the operation of the association had been employed except a young lady whose duties were to keep the "office" open from 8:30 A.M. to 12:00 Noon, and from 1:00 to 5:00 P.M., daily.  No managing officer had been employed.

(6)  The name of the association was not permanently placed on the premises of the office building; however, two placards were taped to the windows of the office stating that the premises was the temporary home of the association, and the association had not advertised in any way that it was open for business.

(7)  The funds paid into the association for permanent stock and paid in surplus in the total sum of $125,000.00 were intact, with the exception of certain necessary expenditures made by the association in connection with the acquisition of its "office," and the other necessary expenses of the organizers.

(8)  The examiner found as a fact that no actual savings and loan business had been transacted, and that no deposits had been accepted, no loan applications taken, and no loan commitments made.

(9) At a hearing held in the office of the Banking Department on October 3, 1958, the President and attorney for the association stated that it was his understanding that if the association transacted any business of any nature before the insurance was approved it would be impossible thereafter to obtain such approval, as shown by a letter from the Federal Home Loan Bank in which the association was advised not to transact business or advertise the possibility of future insurance of accounts until the application for insurance had been approved. He further stated that he was trying to follow the instructions of the Federal Home Loan Bank official by not transacting business of any nature before receiving the approval of the application for insurance.

Based upon the foregoing factual situation you have requested our opinion as to (1) whether the association did "commence business" within six months from the date of the issuance of its certificate of authority to do business as required by the provisions of Article 881a-4, Vernon's Civil Statutes, and (2) is Article 881a-4, Vernon's Civil Statutes, constitutional?

Article 881a-4, V.C.S., reads as follows:

"When the Banking Commissioner of Texas shall have approved the organization certificate and the proposed by-laws and shall have issued the certificate of such approval and filing, it shall then issue a certificate of authority to do business, providing that when any building and loan association holding a charter under the laws of this State shall fail to commence business within six months from the date of the issuance of the certificate of authority, such association shall ipso facto be dissolved and its certificate of incorporation shall be null and void, without further executive or judicial action."

This article clearly provides that if the association does not "commence business" within six months from the date of the issuance of its certificate of authority, the association shall ipso facto be dissolved and its corporate existence becomes null and void without any further executive or judicial action.

The Fifth Amendment to the Constitution of the United States provides that no person shall be deprived of his property without due process of law. Article I, Section 19, of the Constitution of Texas provides that "no citizen of this State shall

be deprived of . . . property . . . except by due course of
the law of the land." This constitutional provision corre-
sponds to the Fifth Amendment to the Constitution of the
United States. It is not deemed necessary to cite any author-
ity to the effect that a corporation, or in this case a build-
ing and loan association, which has been duly granted a charter
by proper authorities of the State of Texas, is a citizen of
this State within the meaning of the two constitutional provi-
sions above referred to. It will be noted that it is specifi-
cally stated in the article that if the association fails to
"commence business" within six months from the date of the
issuance of the certificate of authority by the Banking Commis-
sioner of the State of Texas, the association shall ipso facto
be dissolved without further executive or judicial action.
The question which arises is, since the corporation is ipso
facto dissolved without any further executive or judicial de-
termination, who adjudicates or finds, under a given state of
facts, whether the association has "commenced business" within
the time prescribed?

Clearly, by the very terms of the law itself, the
Banking Commissioner of Texas is without authority to decide
whether the association, under a given state of facts, has
failed to commence business, or whether it has commenced busi-
ness so as to relieve it from the penalty of forfeiture of its
charter and right to do business theretofore granted it by the
State of Texas in manner and form provided by law, and no offi-
cer, court, or other tribunal is empowered to determine this
fact. Its charter and its certificate of authority constitute
property, and the provisions of the article may not be construed
to be "the due course of the law of the land"; then, manifestly,
this statute attempts to deprive the association of its property
in violation of Section 19, Article I, of the Constitution of
Texas, which guarantees "due process" to every citizen.

It is the opinion of this office that the statute,
Article 881a-4, Vernon's Civil Statutes, which provides for the
ipso facto dissolution and forfeiture of the certificate of in-
corporation of the association for failing to "commence business"
within the period of six months from the date of the issuance
of the certificate of authority is violative of the provisions
of Section 19, Article I of the Constitution of Texas, and the
Fifth Amendment to the Constitution of the United States.

In view of the holding that the provisions of the statute are violative of such constitutional provisions, it is unnecessary to answer your first question as to whether, under the factual situation stated above, the association had or had not "commenced business" within the time prescribed by the statute.

## SUMMARY

Article 881a-4, Vernon's Civil Statutes, which provides that unless a building and loan association shall "commence business" within six months from the date of the issuance of its certificate of authority the association shall be *ipso facto* dissolved and its certificate of incorporation declared null and void without further executive or judicial action, violates the provisions of the Fifth Amendment to the Constitution of the United States, and Section 19, Article I, of the Constitution of Texas, and is therefore unconstitutional and void.

Yours very truly,

WILL WILSON
Attorney General of Texas

By C. K. Richards

C. K. Richards
Assistant

CKR:wb

APPROVED:

OPINION COMMITTEE

Geo. P. Blackburn, Chairman
J. C. Davis, Jr.
L. P. Lollar
Riley Eugene Fletcher

REVIEWED FOR THE ATTORNEY GENERAL

BY: W. V. Geppert